THOMAS CONNELLY, ESQUIRE
**Thomas P. Connelly, Jr.**
NJ Atty. No. 012562005
2090 Marlton Pike East
Cherry Hill, NJ 08003
856.521.3771 (office)
856.624.3923 (fax)
tpc@attorneytpc.com

ELECTRONICALLY FILED
JURY TRIAL DEMANDED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABSOLUTE POWER SYSTEMS, INC., and JAMES NEMEC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CUMMINS, INC.,<br>COOPER LEVENSON, P.A., and<br>RONA Z. KAPLAN,<br><br>                    Defendants. | Civil Action No. _____<br><br>**PLAINTIFFS' COMPLAINT** |

## PLAINTIFFS' COMPLAINT

Plaintiffs, Absolute Power Systems, Inc., and James Nemec by way of Complaint against the Defendants say as follows.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 as to Plaintiffs' herein "Count I" under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 (hereinafter "RICO"), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to all other Counts.

2.   Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391, because Defendants Cooper, Levenson, April, Niedelman & Wagenheim, P.A., and Rona Z. Kaplan are subject to personal jurisdiction in this judicial district and/or reside in this district.

## THE PARTIES

3.   Plaintiff, Absolute Power Systems, Inc. ("Absolute"), is a New Jersey corporation with a place of business at One Eves Drive, Suite 107, Marlton, New Jersey, 08053.

4.   Plaintiff, James Nemec ("Nemec") is an adult citizen of the State of New Jersey residing at 115 Leeds Road, Mount Laurel, New Jersey, 08054.

5.   Defendant Rona Z. Kaplan, Esquire ("Kaplan") is an attorney at law of the State of New Jersey and at all times relevant and material hereto, was acting in her capacity as an employee/agent and/or officer and/or shareholder/owner or partner of Defendant Cooper, Levenson, April, Niedelman & Wagenheim, P.A., and/or as an agent of Defendant, Cummins, Inc.

6.   Defendant Cooper, Levenson, April, Niedelman & Wagenheim, P.A. ("Cooper Levenson, P.A.") is a New Jersey professional association for the practice of law with a principal office and place of business at 1125 Atlantic Avenue, Atlantic

City, New Jersey, 08401, and which does business as "Cooper Levenson, P.A.".

7.     Defendant, Cummins, Inc., is, upon information and belief, an Indiana corporation with a corporate headquarters located at 500 Jackson Street, Columbus, Indiana, 47201.

## RECITATION OF MATERIAL FACTS

8.     Defendant, Cummins, Inc. ("Cummins") was the supplier of backup generators to Plaintiff, Absolute Power Systems, Inc. (hereinafter "Absolute"), a value-added reseller owned by Defendant, James Nemec ("Nemec") and his wife, Minerva.

9.     Absolute was the successful bidder in a number of public building projects involving numerous contractors and subcontractors.

10.     Only Cummins or Cummins-authorized technicians could perform startup of the generators once they were installed at Absolute's customers' location.  Startup was of course required in order for Absolute to fulfill its contractual obligations to its customers, and in fact for each of the public works projects to be completed, and all of the contractors paid.

11.     Cummins refused to perform startup on one of the projects unless Absolute paid it all outstanding balances, even though this was not part of any agreement between the parties.  When

negotiations broke down, Cummins went around Absolute and worked directly with Absolute's customers.

12. Cummins, through its attorneys, Defendant Cooper Levenson, P.A. ("Cooper Levenson"), then, in the late Summer of 2013, forwarded a series of letters to the aforesaid public entities, asking them not to pay Absolute until Absolute paid Cummins what was allegedly owed, and implying that if Cummins was not paid, it would not perform startup of the generators, thus preventing completion of the projects.

13. The letters, Attached **Exhibit "A"**, grossly misstated a portion of the amounts allegedly due.

14. Cummins shortly thereafter, on July 30, 2013, filed suit against Absolute and Nemec, alleging breach of contract and claiming the same erroneous amounts stated in the letters.

15. The matter was filed under Burlington County, New Jersey Docket No. BUR-L-1897-13 ("Burlington County action").

16. There was a trial in July of 2015, but before the jury returned a verdict, a settlement was ostensibly reached and put on the record.

17. Cummins' complaint in the state court action was, intentionally and fraudulently, never amended by its attorneys, Defendant Cooper Levenson, P.A., even at trial, to reflect the correct amounts allegedly due and owing Cummins by Absolute in violation of New Jersey Rule of Court 1:4-8(a)(3).

18.  Due to Nemec's perception that he had not received and would not receive a fair trial in the Burlington action, his consent to the settlement was only apparent, and not actual.

19.  Furthermore, if any agreement was actually reached, it was between Absolute and Cummins only.  Nemec never agreed to accept personal liability for Absolute's debts, and in fact Nemec did not appear on the verdict sheet at trial.

20.  Furthermore, the agreement was for the specific release of all claims actually brought in the Burlington action, not a general release of all claims between Absolute and Cummins.  A copy of the relevant transcript is attached as **Exhibit "B"**.

21.  Before the trial, Absolute and Nemec filed a motion to amend their counterclaim in the Burlington action to add certain parties and claims, and also filed a new action in Camden County which brought identical claims, including claims against Cummins, Cooper Levenson, and its attorney, Fredric Shenkman, who authored the aforesaid letters to the public entities.

22.  As was anticipated, Absolute and Nemec's motion in the Burlington County action was never heard by the state trial court, and so their aforesaid amended counterclaim was never filed.

23.  After the ostensible settlement, Defendant, Cummins through Defendant, Kaplan, demanded additional settlement terms that Kaplan failed to negotiate and place on the record at trial. Specifically, Kaplan demanded a general release and that Nemec

accept personal liability for Absolute's debts which Nemec had ostensibly agreed to settle.

24. Also *after* the trial and settlement, at Kaplan's request, the state trial court granted summary judgment to Cummins on several of its breach of contract claims, entering judgment *nunc pro tunc* on August 25, 2015. <u>See</u> Attached **Exhibit "C"**.

25. When Defendant, Kaplan could not bully Absolute and Nemec into agreeing to Cummins' new terms, Kaplan filed a frivolous "Motion on Short Notice to Void the Settlement Agreement, Accept the Jury Verdict, for Sanctions and Dismissal of Defendant's Camden County Complaint, as Required by <u>R</u>. 4:5-1(b)(2)". A copy of this motion is attached as **Exhibit "D"**.

26. This "Motion on Short Notice to Void the Settlement Agreement, Accept the Jury Verdict, for Sanctions and Dismissal of Defendant's Camden County Complaint, as Required by <u>R</u>. 4:5-1(b)(2)" was without any legal basis whatsoever, and was designed to solicit an order from the state trial court that would disqualify or otherwise harm, stifle or suppress the undersigned counsel for Plaintiffs Absolute and Nemec in their matters before the state trial court, and deprive them of the effective assistance of counsel.

27. Although the record is unclear and, quite frankly, nonsensical, the undersigned's purported violation of <u>R</u>. 4:5-1(b)(2) was in failing to immediately notify the state trial court

and Kaplan that Absolute had *voluntarily dismissed its claims against Cummins* in the Camden action. <u>See</u> transcript of September 4, 2015 and September 18, 2015, Attached **Exhibits "E"** and **"F"**, respectively.

28. Defendant Kaplan claimed on the trial court record, after her motion was substantially denied, that the "Motion on Short Notice to Void the Settlement Agreement, Accept the Jury Verdict, for Sanctions and Dismissal of Defendant's Camden County Complaint, as Required by <u>R</u>. 4:5-1(b)(2)" was brought only "to make a record." <u>See</u> **Exhibit "F"**.

29. In support of Defendant, Cummins' motion for sanctions, Defendant Kaplan misrepresented to the state trial court on behalf of Cummins, in writing, <u>see</u> Attached **Exhibit "G"**, and orally, <u>see</u> Attached **Exhibit "F"**, that Cummins had incurred litigation expenses that could have been avoided by the undersigned's compliance with <u>R</u>. 4:5-1(b)(2), the <u>Rule</u> under which the motion was brought. <u>R</u>. 4:5-1(b)(2).

30. When the undersigned at argument pointed out that in her certification, Kaplan had stated that she had "not [expended] unnecessary time", **Exhibit "G"** at Paragraph 4, in pursuing her aforesaid motion, she assured the state trial court on the oral record (appearing by telephone), that her client, Cummins had indeed incurred the litigation costs and expenses certified to, as a direct result of the undersigned's alleged violation.

31.  On September 16, 2015, the state trial court, admitted that it was without "jurisdiction" to grant any of the substantive relief requested by Cummins in its aforesaid "Motion on Short Notice to Void the Settlement Agreement, Accept the Jury Verdict, for Sanctions and Dismissal of Defendant's Camden County Complaint, as Required by R. 4:5-1(b)(2)" and denied same, but granted Cummins' frivolous application for counsel fees.  A copy of the September 16, 2015 Order is attached as **Exhibit "H"**.

32.  The court also *sua sponte* enforced the settlement agreement as to both Nemec and Absolute, thus voiding or superseding the *nunc pro tunc* summary judgment orders entered August 25, 2015.

33.  In a subsequent order solicited by Defendant Kaplan and signed by the state trial court, "[d]efense counsel" was ordered to pay "[p]laintiff's counsel" $7,031.00 in fees and $340.68 in costs."  Attached **Exhibit "I"**.

34.  Neither "defense counsel" nor "plaintiff's counsel" were ever parties to the Burlington action.

35.  Rule 4:5-1(b)(2) neither provides for sanction of, nor payment to, non-parties.

36.  On or about October 27, 2015, Defendant Cummins through Defendant Kaplan fraudulently filed with the State of New Jersey, and recorded as a lien, the August 25, 2015 order granting summary judgment *nunc pro tunc*, even though they knew that the settlement

agreement had been enforced and that the order was void.   See Attached **Exhibit "C"**.

37.   This recorded lien was thereafter forwarded to Nemec through his undersigned counsel.

38.   On or about October 23, 2015, Defendant, Cummins, through Defendant Kaplan, filed a "Motion to Enforce Litigant's Rights," wherein Kaplan requested that the undersigned counsel for the plaintiffs be arrested.   A copy of this motion is attached as **Exhibit "J"**.

39.   There was no factual or legal basis for Kaplan's application for the undersigned's arrest, and Kaplan was notified of same before the hearing by the undersigned.

40.   In her papers, Defendant Kaplan fraudulently inserted the name of the undersigned for "defense counsel" and fraudulently asserted that the undersigned was a "party" to Burlington action. See **Exhibit "J".**

41.   Kaplan's application to have the undersigned arrested was denied on November 23, 2015.   See Attached **Exhibit "K"**.

42.   On or about November 18, 2015, pursuant to its previous orders enforcing the settlement agreement, the state trial court entered final judgment in the amount of $70,000 against Absolute and Nemec.   In that same document and over the undersigned's objection, the state trial court also entered two contingent, non-final orders. See Attached **Exhibit "L"**.

43.  On or about December 1, 2015, Defendant Kaplan published eight (8) separate information subpoenas, utilizing the United States Mail, to Plaintiffs James Nemec and Absolute Power, by regular mail and certified mail, in two separate mailings, falsely stating that "Judgment has been entered against you in the Superior Court of New Jersey, Law Division, Burlington County on November 18, 2015 entering final judgment in the amount of $128,470.00, of which $128,470.00 together with interest from November 18, 2015 remain due and unpaid."

44.  The information subpoenas, attached collectively as **Exhibit "M"**, are signed by "Rona Zucker Kaplan Attorneys for Plaintiff" and "Michelle M. Smith Clerk of the Superior Court."

45.  The captioned plaintiff on both information subpoenas is "Cummins Power Systems, LLC". Upon information and belief, Cummins Power Systems, LLC is a subsidiary or a predecessor of Defendant herein, Cummins, Inc.

**COUNT I**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(c) and (d)**
*All Plaintiffs v. All Defendants*

46.  Plaintiffs hereby repeat and incorporate by reference each and every one of the foregoing paragraphs as though fully set forth herein.

47.   This Count is brought by all Plaintiffs against all Defendants (the "Count I Defendants").

48.   Defendant Cummins, Inc. is an enterprise engaged in, and whose activities affect, interstate commerce.   The other Count I Defendants are employed by or associated with the enterprise.

49.   Defendant Cooper Levenson, P.A. is an enterprise engaged in, and whose activities affect, interstate commerce.   Defendant, Rona Z. Kaplan is employed by or associated with the enterprise.

50.   The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiffs and engaging in unlawful debt collection.

51.   Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of mail fraud, wire fraud, racketeering, and unlawful debt collection.

52.   Defendants engaged in a pattern of racketeering activity by willfully and knowingly committing mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, racketeering under 18 U.S.C. § 1952, and/or unlawful debt collection in violation of 18 U.S.C. § 1962(c).

53.   Specifically, through Defendant Kaplan's aforesaid acts and omissions performed on behalf of and/or by agreement with Defendants Cooper Levenson, P.A. and Cummins, Defendants used

either mail or wire communications in the foreseeable furtherance of a scheme to defraud Plaintiffs, by material deception, with the intent to deprive Plaintiffs of their property, their honest services, or those of their undersigned counsel, and to engage in unlawful debt collection.

54. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

55. The Count I Defendants have directly and indirectly conducted and participated in the conduct of the enterprises' affairs through the pattern of racketeering and activity described above and through the collection of unlawful debt, in violation of 18 U.S.C. § 1962(c).

56. The Count I Defendants agreed and conspired to participated in the conduct of the enterprises' affairs through the pattern of racketeering and activity described above and the collection of unlawful debt, in violation of 18 U.S.C. § 1962(d).

57. As a direct and proximate result of the Count I Defendants' racketeering activities, unlawful debt collection, and violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs have been injured in their business and property in the following ways.

58. Plaintiffs have been deprived of the effective assistance of their counsel, and have been forced to expend monies and time in defense of Defendants' fraudulent racketeering activities and unlawful debt collection.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against the Count I Defendants as follows: actual damages, punitive damages, and reasonable attorneys' fees and costs of suit. Furthermore, Plaintiffs requests that all collection activities against them and their undersigned attorney be enjoined pending disposition of the appeal before the state court, <u>Cummins Power Systems, LLC v. Absolute Power Systems, Inc. and James Nemec</u>, Superior Court of New Jersey, Docket No. A-603-15.

### COUNT II
### <u>WRONGFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE</u>

#### *Plaintiff Absolute Power Systems, Inc. v. Defendant Cummins, Inc.*

59. Plaintiff hereby repeats and incorporates by reference each and every one of the foregoing paragraphs as though fully set forth herein.

60. This Count is brought by Plaintiff, Absolute Power Systems, Inc. ("Absolute") against Defendant, Cummins, Inc. ("Cummins").

61. In or about July of 2011, Plaintiff, Absolute entered into an agreement with Pelel Consulting, APS Contracting and Monmouth County, New Jersey for the purchase of materials, equipment and services from Plaintiff Absolute for use in the construction of the Monmouth County Prosecutor's Office Building Project ("Monmouth County Prosecutor's Office Project"),

specifically the design, installation, startup, service and warranty of a generator and automatic transfer switches.

62.   In or about November of 2010, Plaintiff, Absolute entered into an agreement with Defendant, BW Electrical, for the purchase of materials, equipment and services from Plaintiff Absolute for use in the construction of the Rutgers Livingston Housing Facility in Piscataway, New Jersey ("Rutgers Livingston Housing Project"), specifically the design, installation, startup, service and warranty of a generator and automatic transfer switches.

63.   In or about May of 2011, Plaintiff Absolute entered into an agreement with E-Lectric Corporation, for the purchase of materials, equipment and services from Plaintiff Absolute, for use in the construction of the North Bergen Municipal Court and Parking Facility Project ("North Bergen Project") in North Bergen, New Jersey, specifically, the design, installation, startup, service and warranty of a generator and automatic transfer switches.

64.   In or about January of 2012, Plaintiff Absolute entered into an agreement with Defendant, BW Electrical for the purchase of materials, equipment and services from Plaintiff Absolute, for use in the construction of the Rutgers Livingston Business School in Piscataway, New Jersey ("Rutgers Business School Project"), specifically the design, installation, startup, service and warranty of a generator and automatic transfer switches.

65.    In or about April of 2011, Plaintiff Absolute entered into an agreement with Abco Electric, LLC, for the purchase of materials, equipment and services from Plaintiff Absolute for use in the construction of the Bergen County Juvenile Facility in Teterboro, New Jersey ("Bergen County Juvenile Facility Project"), specifically the design, installation, startup, service and warranty of a generator and automatic transfer switches.

66.    In or about November of 2011, Plaintiff Absolute entered into an agreement with Defendant ALM for the purchase of materials, equipment and services by Defendant ALM from Plaintiff Absolute, for use in the construction of the Bernards Township, Sewage Authority in Bernards Township, New Jersey ("Bernards Township Project"), specifically the design, installation, startup, service and warranty of a generator and automatic transfer switches.

67.    On or about January 13, 2010, Plaintiff Absolute entered into an agreement with P.J. Smith Electric, for the purchase of materials, equipment and services by Defendant ALM from Plaintiff Absolute, for use in the construction of the Picatinny Arsenal Project in Dover, New Jersey ("Picatinny Arsenal Project"), specifically the design, installation, startup, service and warranty of a generator and automatic transfer switches.

68.    In each and every one of the aforesaid seven (7) projects, Defendant Cummins, through its agents, servants, and/or employees, when it was not immediately paid the full amounts that

it alleged it was owed by Plaintiff Absolute on the seven (7) projects, sought out the aforementioned electrical contractors doing business with Plaintiff Absolute, and began to do business with them directly, cutting Plaintiff Absolute out of any role in the installation, startup, maintenance, warranty and repair of the aforesaid generators and APS systems that these contractors were purchasing from Plaintiff Absolute, and interfering with Absolute's contracts with the aforesaid electrical contractors.

69. Cummins' aforesaid actions constituted knowing, intentional and voluntary interference with Absolute's contractual relationships with respect to the aforesaid seven (7) projects.

70. Cummins' aforesaid actions constituted negligent interference with Absolute's contractual relationships with respect to the aforesaid seven (7) projects.

71. Upon information and belief, the generators and ATS systems at each of the aforementioned seven (7) projects are installed, running, and warrantied, Cummins having unilaterally conducted startup without notifying Absolute, and having rendered Absolute's performance of its contractual obligations to its customers, the aforesaid electrical contractors, impossible.

72. Cummins knew and was aware that Absolute had entered into agreements with various electrical contractors in regard to the following projects as aforesaid: Monmouth County Prosecutor's Office Project; Rutgers Livingston Housing Project; North Bergen

Project; Rutgers Business School Project; Bergen County Juvenile Facility Project; Bernards Township Project; Picatinny Arsenal Project.

73. At all times relevant and material hereto Cummins knew and was aware that Absolute had contracts with the electrical or general contractors on each of the aforesaid projects, and that Absolute had an ongoing business relationship with each of them.

74. Cummins was not a party to the agreements that Absolute Power Systems, Inc. had entered into with the aforesaid electrical contractors with respect to the aforesaid projects.

75. When it was not immediately paid the full amounts that it alleged it was owed by Absolute on the seven projects, Cummins, through its agents, servants, and/or employees, sought out the electrical contractors doing business with Absolute and began to do business with them directly, effectively cutting Absolute out of any role in the installation, startup, maintenance, warranty and repair of the aforesaid generators and APS systems that these contractors were purchasing from Absolute.

76. Cummins' actions were negligent and without justification or excuse.

77. Cummins negligently interfered with Absolute's contractual business relationships which has caused economic loss to Absolute.

78. Cummins' actions were unreasonable and actually interfered with the contractual business relationships of Absolute with the electrical contractors on each of the seven projects.

79. Cummins' actions constituted unjustified and wrongful interference with Absolute's contractual relationships and reasonable expectation of economic advantage as aforesaid, and did not rest upon a legitimate interest, or have a legitimate purpose.

80. As a result of Cummins' actions, Cummins is liable for the damages caused by their interference with Absolute's contractual relationships.

81. Absolute had a reasonable expectation of economic advantage or benefit flowing from its ongoing business relationship with the each of the electrical contractors on the aforementioned projects.

82. Cummins knew or should have known of the expectancy of the aforesaid economic advantage of Absolute with respect to the electrical contractors on these projects.

83. In its actions as aforesaid, Cummins wrongfully and without justification interfered with Absolute's expectancy of economic advantage or benefit.

84. In the absence of Cummins wrongful acts as aforesaid, it is reasonably probable that Absolute would have realized its aforesaid economic advantage or benefit with respect to its ongoing

relationship with the electrical contractors who were involved in the aforesaid seven projects.

85.  As a result of Cummins aforesaid wrongful acts, Absolute suffered damages.

**WHEREFORE,** Plaintiff Absolute Power Systems, Inc. demands judgment against Defendant, Cummins, Inc., for compensatory and punitive damages, cost of suit, interest and attorney fees.

**COUNT III**
**WRONGFUL INTERFERENCE WITH THE ATTORNEY-**
**CLIENT RELATIONSHIP AND THE PROSPECTIVE**
**ECONOMIC ADVANTAGE FLOWING THEREFROM**
*All Plaintiffs v. All Defendants*

86.  Plaintiffs hereby repeat and incorporate by reference each and every one of the foregoing paragraphs as though fully set forth herein.

87.  This Count is brought by all Plaintiffs against all Defendants (the "Count III Defendants").

88.  Several of the Count III Defendants' aforesaid fraudulent and tortious acts and omissions as aforesaid were directed at the undersigned as counsel for Nemec and Absolute in the Burlington action, with the specific intent of unlawfully interfering with the attorney-client relationship and the benefits to Plaintiffs accruing therefrom.

89.  For example, Count III Defendants', by and through Defendant Kaplan, and through intentional and fraudulent misrepresentations to the state trial court, solicited an order that was entered as a proximate result of those misrepresentations, which purported to render Defendants Rona Z. Kaplan and Cooper Levenson, P.A., "plaintiffs" in the Burlington action and the undersigned counsel a "defendant", and to award Kaplan and Cooper Levenson, P.A. damages, in an effort to stifle the undersigned's effective representation of them.

90.  The Count III Defendants also illegally and without justification or excuse, sought to have the undersigned counsel for the plaintiffs arrested.

91.  The Count III Defendants have also illegally and fraudulently recorded a statewide lien against the undersigned in their ongoing efforts to frustrate the attorney-client relationship.

92.  The Count III Defendants' aforesaid actions constituted knowing, intentional, and voluntary interference with Plaintiffs' contractual relationships with res their undersigned counsel.

93.  The Count III Defendants' aforesaid actions constituted negligent interference with Plaintiffs' contractual relationships with respect to their undersigned counsel.

94.   The Count III Defendants knew and was aware that Absolute had entered into agreements with the undersigned counsel to provide legal services.

95.   At all times relevant and material hereto, the Count III Defendants knew and were aware that Plaintiffs had a contract for legal services with the undersigned, and that Absolute had an ongoing business relationship with the undersigned.

96.   The Count III Defendants were not a party to the agreements for legal services that the plaintiffs had entered into with the undersigned.

97.   The Count III Defendants' aforesaid acts and omissions were negligent and without justification or excuse.

98.   The Count III Defendants negligently interfered with Plaintiffs' contractual business relationships with the undersigned which has caused economic loss to Plaintiffs.

99.   The Count III Defendants' actions were unreasonable and actually interfered with the contractual business relationships of Plaintiffs with the undersigned.

100. The Count III Defendants' actions constituted unjustified and wrongful interference with Plaintiffs' contractual relationships and reasonable expectation of economic advantage as aforesaid, and did not rest upon a legitimate interest, or have a legitimate purpose.

101. As a result of The Count III Defendants' actions, they are liable for the damages caused by their interference with the plaintiffs' contractual relationships with their undersigned counsel.

102. Plaintiffs had a reasonable expectation of economic advantage or benefit flowing from its ongoing business relationship with the undersigned.

103. The Count III Defendants knew or should have known of the expectancy of the aforesaid economic advantage of Plaintiffs with respect to the undersigned.

104. In its actions as aforesaid, the Count III Defendants wrongfully and without justification interfered with Absolute's expectancy of economic advantage or benefit.

105. In the absence of the Count III Defendants' wrongful acts as aforesaid, it is reasonably probable that Absolute would have realized its aforesaid economic advantage or benefit with respect to its ongoing relationship with undersigned counsel.

106. As a result of the Count III Defendants' aforesaid wrongful acts, Plaintiffs suffered damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, for compensatory and punitive damages, cost of suit, interest and attorney fees. Furthermore, Plaintiffs requests that all collection activities against their undersigned attorney be

enjoined pending disposition of the appeal before the state court, Cummins Power Systems, LLC v. Absolute Power Systems, Inc. and James Nemec, Superior Court of New Jersey, Docket No. A-603-15.

### COUNT IV
### VIOLATION OF THE FAIR DEBT COLLECTION
### PRACTICES ACT, 15 U.S.C. § 1692 to §1692p

#### *Plaintiff James Nemec v. Defendants Cooper Levenson, P.A. and Rona Z. Kaplan*

107. Plaintiff hereby repeats and incorporates by reference each and every one of the foregoing paragraphs as though fully set forth herein.

108. This Count is brought by Plaintiff, James Nemec ("Nemec") against Defendants Cooper, Levenson, April, Niedelman & Wagenheim, P.A. ("Cooper Levenson, P.A.) and Rona Z. Kaplan ("Kaplan") (the "Count IV Defendants").

109. The Count IV Defendants are debt collectors subject to liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 to §1692p.

110. On or about October 27, 2015, Defendant Cummins through Kaplan fraudulently filed with the State of New Jersey, and recorded as a lien, the August 25, 2015 order of the state trial court granting summary judgment *nunc pro tunc*, even though they knew that the settlement agreement had been enforced and that the

order was therefore superseded and void.  <u>See</u> Attached **Exhibit "C"**.

111. This recorded lien was thereafter forwarded to Nemec through his undersigned counsel.

112. The aforesaid recording and publishing of a superseded and void order constituted a violation of Plaintiff Nemec's rights under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 to §1692p.

113. On or about December 1, 2015, Defendant Kaplan published eight (8) separate information subpoenas, utilizing the United States Mail, to Plaintiffs James Nemec and Absolute Power, by regular mail and certified mail, in two separate mailings, to Nemec's home and his business, falsely stating that "Judgment has been entered against you in the Superior Court of New Jersey, Law Division, Burlington County on November 18, 2015 entering final judgment in the amount of $128,470.00, of which $128,470.00 together with interest from November 18, 2015 remain due and unpaid."

114. The information subpoenas, attached collectively as **Exhibit "M"**, are signed by "Rona Zucker Kaplan Attorneys for Plaintiff" and "Michelle M. Smith Clerk of the Superior Court."

115. The aforesaid publication of false information to Plaintiff, James Nemec, constituted four (4) separate violations

of Plaintiff Nemec's rights under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 to §1692p.

**WHEREFORE,** Plaintiff James Nemec demands judgment against Defendants Rona Z. Kaplan and Cooper Levenson, PA for compensatory damages, including but not limited to damages for physical distress, emotional distress, marital distress, lost wages, statutory damages of $1,000 per violation, attorneys' fees, and costs of suit. Furthermore, Plaintiff requests that all collection activities against him be enjoined pending disposition of the appeal before the state court, <u>Cummins Power Systems, LLC v. Absolute Power Systems, Inc. and James Nemec</u>, Superior Court of New Jersey, Docket No. A-603-15.

<u>**JURY DEMAND**</u>

Plaintiffs hereby demand a trial by jury as to each and every one of their claims.

Respectfully submitted,

**THOMAS CONNELLY, ESQUIRE**



By:   **THOMAS P. CONNELLY, JR.**
<u>tpc@attorneytpc.com</u>
*Attorney for Plaintiffs,*
*Absolute Power Systems, Inc.*
*and James Nemec*

Dated: <u>December 9, 2015</u>