IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABSOLUTE POWER SYSTEMS, INC., and JAMES NEMEC, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 15-8539 (JBS/KMW) |
| v. | |
| CUMMINS, INC., COOPER LEVINSON, P.A., and RONA Z. KAPLAN, | **OPINION** |
| Defendants. | |

APPEARANCES:

THOMAS P CONNELLY, JR, ESQ.
63 N. BROAD STREET
WOODBURY, NJ 08096
    Attorney for Plaintiffs

KURT M MULLEN, ESQ.
NIXON PEABODY, LLP
100 SUMMER STREET
BOSTON, MA 02110
    Attorney for Defendant Cummins, Inc.

FREDERIC L. SHENKMAN, ESQ.
COOPER LEVENSON, P.A.
1125 ATLANTIC AVENUE – 3RD FLOOR
ATLANTIC CITY, NJ 08401
    Attorney for Defendants Cooper Levenson, P.A. and Rona Z. Kaplan, Esq.

**SIMANDLE, Chief Judge:**

## I.  INTRODUCTION

In this case, Plaintiff, Absolute Power Systems, Inc. (hereinafter "Absolute"), a value-added reseller owned by Plaintiff James Nemec and his wife, Minerva, bring legal action against Defendants Cummins, Inc. (hereinafter "Cummins"), Cooper Levinson, P.A., and Rona Z. Kaplan (hereinafter "Kaplan"). (Compl. ¶ 8.)  Pending before the Court are Defendants' motion to dismiss the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO") claims and motion to dismiss the non-RICO claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons that follow, the Court grants the Defendants' motion to dismiss.[1]

## II.  BACKGROUND[2]

The facts of this dispute, taken from Plaintiff's Complaint RICO Case Statement, are as follows.  Cummins supplied backup generators to Absolute, a value-added reseller owned by Plaintiff James Nemec (hereinafter "Nemec") and his wife,

---

[1] Because the Court finds all of Plaintiffs' claims subject to dismissal for failure to state a claim, the Court need not address Defendants' alternative bases for dismissal—namely, the Rooker-Feldman doctrine, Younger abstention, Ripeness and New Jersey's Entire Controversy Doctrine. (Defs.' Non-RICO Br. at 2-7).

[2] For purposes of the pending motions, the Court accepts as true the version of events set forth in Plaintiff's Complaint, documents explicitly relied upon in the Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

Minerva. (Compl. ¶ 8.)  Absolute had relied on Cummins to perform startup of the generators installed at Absolute's customers' locations, but Cummins refused to perform startup on one project unless Absolute paid it all outstanding balances, even though this was not part of any agreement between the parties. (RICO Case Statement, Factual and Procedural History, ¶¶ 3-4.)  Cummins then sent "defamatory" letters to Absolute's customers asking them not to pay Absolute until Absolute paid Cummins what was allegedly owed, and implying that if Cummins was not paid, it would not perform startup of the generators, thus preventing completion of the projects. (Id., ¶ 5.)

On July 30, 2013, Cummins filed a breach of contract suit against Absolute and Nemec in New Jersey state court, in Burlington County. (Id., ¶¶ 7-8.)  Plaintiffs allege that before and during the trial, the presiding Judge, the Hon. M. Patricia Richmond (hereinafter "Judge Richmond"), Cummins, and Defendant's counsel, Rona Z. Kaplan (hereinafter "Kaplan"), conspired to ensure that Plaintiffs did not prevail in their case. (Id., ¶¶ 16-19.)  The motive was allegedly a quid pro quo for the successful 2003 prosecution of Judge Richmond's ex-spouse by the New Jersey Office of Attorney Ethics, for whom Kaplan was a prosecutor at the same time that Judge Richmond's ex-spouse was disbarred. (Id., ¶¶ 19, 42.)  The conspiracy allegedly manifested pre-trial in several ways: (1) through

3

Kaplan soliciting an order from Judge Richmond denying Plaintiffs counsel's motion to be relieved for non-payment of attorneys' fees, thereby forcing plaintiffs' counsel into a contingency fee arrangement (id., ¶¶ 17-24); (2) through Judge Richmond's improper dismissal of a summary judgment motion over Plaintiff counsel's objection (id., ¶¶ 25, 29-37); and (3) through Judge Richmond's "truncat[ing] the scope" of Plaintiffs' deposition of the attorney who wrote the "defamatory" letters. (Id., ¶ 27). On June 22, 2015, shortly before trial commenced, the court granted Cummins' partial motion for summary judgment, which resulted in a judgment of $138,076 in favor of Cummins (Compl. Ex. C; Ex. G, ¶ 1.)

During the mid-July trial, Judge Richmond allegedly exhibited "gross bias" in favor of Defendants and against Plaintiffs in a number of ways, by (1) denying Nemec's request to use the restroom in front of prospective jurors; (2) "snapping at" Plaintiffs' counsel and Plaintiff before the jury; (3) stating that Plaintiff's counsel was a "terrible attorney"; (4) making "improper" evidentiary rulings; (5) ordering Nemec to leave the courtroom during the proceedings and babysit Plaintiffs' counsel's children; and (6) having ex parte conversations about the merits of the case with Defendants' counsel, among other alleged misdeeds. (Factual and Procedural History, ¶ 39.) After closing argument, Plaintiffs' counsel

4

moved for a mistrial because Kaplan mentioned a summary judgment order during closing argument, but Judge Richmond, instead of ruling on the motion, "strong-armed" Nemec into settling the case. (Id., ¶ 40.)

On July 29, after the trial concluded but before the jury returned a verdict, the parties reached a settlement agreement that Judge Richmond put on the record. (Id., ¶¶ 9-10; Ex. D.) In lieu of the $138,076 awarded to Cummins when the court granted its motion for partial summary judgment and the $199,196 at issue in the jury trial, Cummins agreed to accept $70,000 from Plaintiffs, payable at the rate of $1,000 per month, in addition to $43,890 when Plaintiffs were paid a cancellation fee incurred on a pending project, and $14,580 when Plaintiffs were paid by a subcontractor, for a total of $128,470. (Compl. Ex. G, ¶ 10.)[3] Nemec now believes that settlement was only reached between Absolute and Cummins, and that he never agreed to accept personal liability for Absolute's debts or a general release. (Compl., ¶¶ 11, 45.) Furthermore, Nemec alleges that he only gave apparent consent to the agreement, not actual consent,

---

[3] Notably, the Settlement Agreement states "[s]hould [Plaintiffs] fail to make the settlement payments hereunder, [Defendant] or [Defendant]'s counsel are hereby authorized to file a judgment in the amount of $128,470.00 minus credit for apyments [sic] made." (Compl. Ex. D.)

because he believed that he had not received a fair trial. (Factual and Procedural History, ¶ 10.)

On July 30, Defendants learned that Plaintiffs' counsel had filed suit in Camden County Superior Court against them, despite having already agreed to release all claims in the settlement. (Defs.' Statement of Proceedings, ¶ 14.)  In light of this new information, on August 7, Defendants filed a motion before Judge Richmond to void the settlement since they (1) alleged that the filing of this suit violated the terms of the agreement (Compl. Ex. D), and (2) believed that general release and personal liability language added by Plaintiffs' counsel were "additional terms" and not negotiated or placed on the record. (Factual and Procedural History, ¶ 45.)  On September 16, Judge Richmond granted Defendants' motion to enforce the original July 29 settlement agreement (Compl. Ex. H), but "inexplicably" granted Defendants' application for counsel fees and noted that the sanction was for "other [unspecified] things" that Plaintiffs' counsel had done at trial. (Id., ¶¶ 52, 79; Compl. Ex. H.) Absolute filed an appeal of the settlement agreement and counsel fees in the New Jersey Appellate Division on October 10, 2015, and that appeal is currently pending. (Defs.' Br., Ex. 7.)

Plaintiff did not make any payments contemplated by the July 29 settlement agreement by the September 15 deadline, so on September 21, Defendants filed a motion for an automatic default

6

judgment in the amount of $128,470. (Defs.' Br., Ex. 10.)  As a result, on October 23, Kaplan sought to have Plaintiffs' counsel arrested for non-payment of the settlement and counsel fees in a "Motion to Enforce Litigant's Rights." (Compl., ¶¶ 86, 105; Exs. J, K.)  Furthermore, on October 27, Kaplan "attempted to record" as a lien the August 25 Judge Richmond order granting summary judgment to Cummins, even though she knew that the settlement agreement had been enforced and that the order was therefore void. (Factual and Procedural History, ¶¶ 106, 109.)[4]  On November 18, to enforce the settlement agreement, Judge Marc Baldwin entered a $70,000 final judgment against Absolute and Nemec. (Id., ¶ 91.)  However, on December 1, Kaplan sent eight separate information subpoenas to Nemec's home and business, stating that "[j]udgment has been entered against you in the Superior Court of New Jersey, Law Division, Burlington County on November 18, 2015 entering final judgment in the amount of

---

[4] The Complaint first alleges that Defendants "attempted to record" the voided summary judgment order as a lien against Plaintiffs, (Compl. ¶ 106), but three paragraphs later, it claims that Defendants "fraudulently filed" the lien. (Compl. ¶ 109.)  While Plaintiff attaches copies of the arrest order (Compl., Ex. K), information subpoenas (Compl., Ex. M), and a December 3, 2015 judgment lien for the $70,000 settlement and $7,371.68 in attorneys' fees and costs (Factual and Procedural history, ¶ 42), Plaintiffs do not attach any documentation of any lien regarding the voided summary judgment order.  Even if the lien regarding the voided summary judgment order was filed on October 27, 2015, the settlement agreement was not enforced by Judge Baldwin until November 18, 2015 (RICO Case Statement, ¶ 91, Compl., Ex. L.)

$128,470.00, of which $128,470.00 together with interest from
November 18, 2015 remain due and unpaid." (Id., ¶¶ 92, 112;
Compl. Ex. M.)  The subpoena was signed by Kaplan and a
subsidiary of Cummins was named on the subpoena. (Factual and
Procedural History, ¶¶ 94, 113-114.)  Also on December 1, Kaplan
sent two additional subpoenas to Plaintiffs stating that they
owed $7,031.00 in counsel fees and $340.68 in costs. (Id., ¶
116.)

Plaintiffs filed their Complaint in this action on December
9, 2015. [Docket Item 1.]  On January 19, 2016, this Court
issued a RICO Case Order requiring Plaintiffs to submit a RICO
Case Statement, which they submitted on February 19, 2016. [See
Docket Items 11, 13.]  Thereafter, Defendants filed a motion to
dismiss on a variety of grounds, including for failure to state
a RICO claim, abstention and ripeness grounds, and failure to
state a claim upon which relief can be granted pursuant to Rule
12(b)(6), Fed. R. Civ. P. [Docket Item 14.]

Plaintiffs' Complaint allege violations of the Racketeering
Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §
1962(c) and (d) (Count One), Wrongful Interference with
Prospective Economic Advantage (Count Two), Wrongful
Interference with the Attorney-Client Relationship and the
Prospective Economic Advantage Flowing Therefrom (Count Three),
and Violation of the Fair Debt Collection Practices Act (15

U.S.C. § 1692 to § 1692(p) (FDCPA) (Count Four).  Plaintiffs ask for actual damages, punitive damages, reasonable attorneys' fees, and that the Court enjoin all collection activities against them pending disposition of the appeal before the state court. (Compl. at 13, 25.)

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).  While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id.  A complaint will survive a motion to dismiss if it contains sufficient factual matter to

9

"state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  Although a court

must accept as true all factual allegations in a complaint, that

tenet is "inapplicable to legal conclusions," and "[a] pleading

that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." Id. at 678.

## IV.   DISCUSSION

### A. RICO Claims

After being granted leave to file a RICO Case Statement by

this Court, Plaintiffs transformed their 12 paragraph

description regarding RICO in its Complaint into a 44-page, 121-

paragraph Case Statement.  While it appears that Plaintiffs

increased the specificity of their RICO allegations, this Court

finds that the Case Statement fails to contain sufficient

pleadings as to all relevant elements.  Moreover, the claims

must fail because they fail to meet the heightened pleading

requirements for fraud under Fed. R. Civ. P. 9(b).  As a result,

Plaintiffs' RICO claims cannot survive Defendants' motion to

dismiss.

Section 1962(c) of the RICO statute, under which

Plaintiffs' RICO claim is brought, provides:

> It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which
> affect, interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the conduct of such

> enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (citation omitted). Careful scrutiny of such claims is appropriate because of the "relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Kolar v. Preferred Real Estate Invs., Inc., 361 F. App'x 354, 363 (3d Cir. 2010) (internal citations omitted)). Moreover, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Rothberg v. Marger, No. 11-5497, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (internal citations omitted).

Defendants raise five RICO arguments their its motion to dismiss: Plaintiffs have failed to allege (1) facts showing a pattern of RICO predicate acts, (2) injury that is proximately caused by RICO predicate offenses, (3) facts demonstrating a concrete financial harm, (4) a pattern of racketeering activities through a distinct RICO enterprise and (5) facts that meet the Twombly and Iqbal plausibility standard under Fed. R. Civ. P. 12(b)(6). As the Court explains below, at this stage of the litigation, even though Plaintiffs' allegations must be

taken as true, the Court finds that Plaintiffs have failed to sufficiently plead any underlying predicate acts which could form the basis for liability under ¶ 1962(c), as well as any other element of the statute.

## 1. Pattern of RICO Predicate Acts

Defendants first argue that Plaintiffs have failed to allege facts that show a pattern of RICO predicate acts.  To adequately plead a pattern of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering, which acts may include violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 232 (1989).  The failure to allege predicate acts is fatal to a civil RICO claim. See Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  Here, in addition to mail and wire fraud, Plaintiffs allege that Defendants committed the predicate acts of racketeering under the Travel Act, 18 U.S.C. § 1952 and unlawful debt collection under 18 U.S.C. § 1962(c). (Factual and Procedural History, ¶¶ 95-96.)

Plaintiffs first seek to establish mail and wire fraud with allegations that Defendants sent ten information subpoenas via mail to Plaintiffs regarding the payment of the sum agreed to in their settlement, sought to have Plaintiffs' counsel arrested for failing to pay the sum, and attempted to file a lien in order to enforce the agreement. (Id., ¶¶ 105-06, 112, 116.)  The

mail fraud statute, 18 U.S.C. § 1341, applies only where the
defendant uses the U.S. mails as "part of the execution" of a
fraudulent scheme. Schmuck v. United States, 489 U.S. 705, 710
(1989).  The wire fraud statute, 18 U.S.C. § 1343, "is identical
to the mail fraud statute except it speaks of communications
transmitted by wire," i.e., telephone, radio, or television, and
does not apply to intrastate communications. United States v.
Frey, 42 F.3d 795, 797 (3d Cir. 1994).  The Third Circuit has
noted that "cases construing the mail fraud statute are
applicable to the wire fraud statute as well." Id. at 797 n. 2
(quoting United States v. Tarnopol, 561 F.2d 466, 475 (3d Cir.
1977)).  To support a mail or wire fraud conviction, a
transmission "must further the scheme to defraud or be incident
to an essential part of that scheme." Id. at 798. The "scheme"
need not be fraudulent on its face, but "must involve some sort
of fraudulent misrepresentations or omissions reasonably
calculated to deceive persons of ordinary prudence and
comprehension." Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406,
1415 (3d Cir. 1991) (quoting United States v. Pearlstein, 576
F.2d 531, 535 (3d Cir. 1978)).  RICO claims premised on mail or
wire fraud "must be particularly scrutinized because of the
relative ease with which a plaintiff may mold a RICO pattern
from allegations that, upon closer scrutiny, do not support it."

13

<u>Kolar v. Preferred Real Estate Investments, Inc.</u>, 361 F. App'x 354, 362 (3d Cir. 2010).

Moreover, where, as here, a plaintiff alleges RICO predicate acts based upon fraudulent activities such as mail or wire fraud, Rule 9(b), Fed. R. Civ. P., imposes a heightened pleading standard on fraud-based claims, requiring a party to "state the circumstances constituting fraud with particularity." <u>Klein v. Gen. Nutrition Cos., Inc.</u>, 186 F.3d 338, 344 (3d Cir. 1999); <u>see also</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202-03 (3d Cir. 2007).  To satisfy this standard, the plaintiff must "plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." <u>In re Riddell Concussion Reduction Litig.</u>, 77 F.Supp.3d 422, 433 (D.N.J. 2015)(citations omitted).  This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984).

In their Complaint and RICO Case Statement, Plaintiffs purport to allege various predicate acts of mail and wire fraud, racketeering, and unlawful debt collection allegedly committed by defendants in the course of attempt to enforce their judgment.  Specifically, Plaintiffs allege that Defendants filed a "fraudulent lien" on October 27, 2015, and then sent ten

subpoenas to Defendants on December 1, 2015 to enforce the judgments. (Factual and Procedural History at ¶¶ 109, 112, 116.) The Complaint and RICO Case Statement do nothing to allege more than the lawful conduct of attorneys representing their clients in enforcing the terms of the settlement agreement. See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 488 (2d Cir. 2014) ("Mere mailings of monthly statements seeking payment with respect to a single established debt . . . do not, without more, amount to or suggest a threat of continued criminal activity."); Werther v. Rosen, No. 02-3589, 2002 WL 31955983, at *3 (E.D. Pa. Oct. 30, 2002) (citations omitted) ("Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation . . . . Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation."). Plaintiffs portray Defendants' litigation activities - "attempt[ing] to record a statewide lien" (RICO Case Statement, ¶ 106) and "publish[ing]. . . separate information subpoenas" (Id., ¶ 112), as acts of mail fraud, wire fraud, and unfair debt collection, even though Plaintiffs also acknowledge that "a prevailing party [can] serve an information subpoena on the judgment debtor in order to gain information in post-judgment discovery about the

15

debtor's assets." (Id., ¶ 67.)  Furthermore, Plaintiffs allege
no facts indicating any communications transmitted by wire,
(under the wire fraud statute, 18 U.S.C. § 1343), no facts
indicating a violation of the Travel Act, 18 U.S.C. § 1952,[5] no
facts indicating that the debt was incurred in "gambling
activity which was in violation of the law of the United
States," (under the definition of unfair debt collection, 18
U.S.C. § 1961 (6)).  Characterizing subpoenas, judgment liens
and litigation documents as predicate acts under RICO "would
have sweeping consequences" . . . "potentially permitting any
litigant to allege that the opposing party's submissions to the
court denying allegations were false and therefore constituted
mail fraud." Nolan v. Galaxy Scientific Corp., 269 F. Supp. 2d
635, 643 (E.D. Pa. 2005); see also FindTheBest.com, Inc. v.
Lumen View Technology LLC, 20 F. Supp. 3d 451, 460 (S.D.N.Y.
2014) ("courts have consistently refused to recognize as wire or
mail fraud even litigation activities that rise to the level of
malicious prosecution simply because the mail or wires were
used.").  Further, conclusory allegations such as "Defendants

---

[5] To properly plead a violation of the Travel Act, Plaintiffs
must allege facts indicating "interstate travel or use of an
interstate facility with the intent to promote unlawful
activity." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,
140 F. 3d 494, 529 (3d Cir. 1998).  Plaintiffs have alleged no
facts indicated that any acts by Defendants consisted of
interstate activity or occurred outside the state of New Jersey.

used either mail or wire communications in the foreseeable
furtherance of a scheme to defraud Plaintiffs, by material
deception . . ." and "[pursuant] to and in furtherance of their
fraudulent scheme, Defendants committed multiple related acts of
mail fraud, wire fraud, racketeering, and unlawful debt
collection." are not enough to defeat a motion to dismiss.
(Factual and Procedural History, ¶¶ 95, 97)  Such a rule "would
create a strange state of affairs in which a complaint could
withstand a motion to dismiss simply through plaintiff's
formulaic recitation of the statutory RICO elements. In re
Schering-Plough Corp. Intron/Temodar Consumer Class Action, No.
06-5774, 2009 WL 2043604, at *11 (D.N.J. July 10, 2009).

Plaintiffs have failed to sufficiently allege any predicate
acts of racketeering, and even if they did, they have also
failed to plead a pattern of racketeering activity under §
1962(c).  Racketeering activity forms a pattern where the
racketeering activities are "related, and that they amount to or
pose a threat of continued ... activity." United States v.
Bergrin, 650 F.3d 257, 267 (3d Cir. 2011).  Relatedness is
demonstrated when racketeering predicates "have the same or
similar purposes, results, participants, victims or methods of
commission, or otherwise are interrelated by distinguishing
characteristics and not isolated events." H.J. Inc., 492 U.S. at
239-40.  Continuity is "a closed—and open-ended concept,

17

referring either to a closed period of repeated conduct, or to
past conduct that by its nature projects into the future with a
threat of repetition." Id. at 241.

Here, while the activities all concern Defendants' attempts
to enforce their settlement against Plaintiffs, the conduct
alleged is not continuous.  The Third Circuit has held that
conduct lasting less than twelve months does not establish
closed continuity, and Plaintiffs have not demonstrated that the
harm extended more than three months, from the time of the
settlement in late July 2015 to the date of the subpoenas in
early December 2015. Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir.
1995).  Open-ended continuity means that the "racketeering acts
themselves include a specific threat of repetition extending
indefinitely into the future," or where the predicate acts are
part of an ongoing entity's "regular way of doing business."
H.J. Inc., 492 U.S. at 242-43.  Plaintiffs do not allege that
Defendants regularly conducted business in this manner beyond
the limited requests to enforce their judgment, nor do they
plead facts suggesting any specific threat of repetition
extending into the future. See Foster v. Denenberg, 616 F. App'x
472, 475 (3d Cir. 2015) (holding that a single fraudulent real
estate transaction does not satisfy RICO's continuity
requirement); Baldwin v. Twp. of Union, No. 02-1822, 2005 WL
3588473, at *6 (D.N.J. Dec. 29, 2005) (finding no threat of

18

continued racketeering activity where "predicate acts focus on clearly defined, discrete and finite goal"). Predicate acts lasting "a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement." H.J. Inc., 492 U.S. at 242. Thus, Plaintiffs fail to allege a pattern of racketeering activity.

### 2. Distinct RICO Enterprise

Defendant next argues that Plaintiff's RICO Case Statement fails to demonstrate a pattern of racketeering activities through a distinct RICO enterprise. A proper § 1962(c) claim must allege "'the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.'" HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc., 590 F. Supp. 2d. 677, 688-89 (D.N.J. 2008)(citations omitted). RICO defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4). In United States v. Turkette, 452 U.S. 576, 583 (1981), the Supreme Court stated that an enterprise "is an entity separate and apart from the pattern of activity in which it engages," and that it is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." "At the

motion to dismiss stage, [however,] it is enough that a plaintiff state what entities it believes constitute an enterprise—a plaintiff does not have to allege the [Turkette] elements to prove that an enterprise actually exists." Darrick Enters. v. Mitsubishi Motors Corp., No. 05-4359, 2007 WL 2893366, at *7 (D.N.J. Sept. 28, 2007) (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 789-90 (3d Cir. 1984)).  So long as a civil RICO plaintiff pleads "facts indicating that the various associates functioned as a unit," the plaintiff has satisfied its burden at the motion-to-dismiss stage. In re Ins. Brokerage Antitrust Litig., MDL Docket No. 1663, 2007 WL 1062980, at *8 (D.N.J. Apr. 5, 2007) (internal quotations and citations omitted).

Here, Plaintiffs have not pleaded sufficient grounds for the enterprise element of their RICO claim.  Plaintiffs name Cummins, Inc., Cooper Levenson, P.A., and Rona Kaplan as those entities and people associated with the enterprise. (RICO Case Statement, 13a.)  However, there are no allegations regarding how each named Defendant conducted the affairs of any such enterprise, or how they functioned as a unit.  When asked to indicate in the RICO Case Statement how the Defendants participated in the operation or management of the enterprise, Plaintiff responded "unknown at this time." (Id., 13c). Moreover, the law is clear that the person who engages in a

pattern of racketeering activity cannot be the same entity as the enterprise. Jaguar Cars, Inc. v. Royal Oaks Motor Co., Inc., 46 F.3d 258, 268 (3d Cir. 1995).  Despite this, Plaintiff states that Cooper Levenson, P.A. employs Rona Kaplan, which directly violates this person-entity rule. (RICO Case Statement, 13b). In addition, Plaintiffs' allegation that Judge Richmond is a wrongdoer through the alleged quid pro quo relating back to the opposing counsel's prosecution of the Judge's ex-husband twelve years prior is nothing more than speculation.  It strains credulity to believe in the existence of a conspiracy of such scope based on the fact that Plaintiff's counsel failed to receive his desired outcome in state court, and that this has anything to do with Defendants' enforcing the terms of the settlement agreement.  It also strains credulity to believe that opposing counsel attempting to enforce a court-approved settlement agreement that Plaintiffs agreed to (but now dispute) suddenly converts Defendants' conduct into some sort of RICO enterprise.  Thus, Plaintiffs' assertion of the existence of a racketeering enterprise is not based on sufficient facts to make entitlement to recovery plausible.

### 3. Proximate Causation and Concrete Financial Harm

Defendant next argues that Plaintiffs' RICO Case Statement fails to allege injury that is proximately caused by a RICO violation.  The central question here is "whether the alleged

[RICO] violation led directly to the plaintiff's injuries." <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 461 (2006).  A showing of injury "requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." <u>Maio v. Aetna Inc.</u>, 221 F.3d 472, 483 (3d Cir. 2000); <u>see also</u> <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 918-19 (3d Cir. 1991)("RICO plaintiffs may recover damages for harm to business and property only, not physical and emotional injuries" resulting from RICO violation).  This requirement "can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." <u>In Re Avandia Mktg. Sales Practices & Prod. Liab. Litig.</u>, 804 F.3d 633, 638 (3d Cir. 2015).

Here, Plaintiffs do not identify any concrete financial injury to their business or property that resulted from the lien, the subpoenas, or the attempt to arrest Plaintiffs' counsel beyond the time it took to file this action.  Plaintiffs do not allege specific facts regarding additional monies expended as the result of the filing of the lien, they do not allege any facts indicating that they spent time responding to any of the subpoenas, and they do allege that anyone was actually arrested as a result of the proposed Order to Enforce

Litigant's Rights.[6]  Plaintiffs state in a conclusory way that they have been "deprived of the effective assistance of their counsel, and have been forced to expend monies and time in defense of Defendants' fraudulent racketeering activities and unlawful debt collection." (Compl. ¶ 58.)  However, when required by the RICO Case Statement to describe the direct causal relationship between the alleged injury and the violation of the RICO statute, Plaintiffs simply state "See foregoing paragraphs" (RICO Case Statement at 16), yet never explain the causal relationship in any other part of their RICO Case Statement.  Consequently, Plaintiffs' allegations are nothing more than conclusory statements, which remain unsubstantiated by any other parts the RICO Case Statement.  Conclusory allegations untethered to facts do not suffice to satisfy the essential RICO element of damages.

### B. Conspiracy to Violate the RICO Statute

Plaintiffs' RICO Case Statement also contains a count of conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d). (Factual and Procedural History, § 100-101.)  The conspiracy

---

[6] In fact, the state court judge struck the Defendants' proposed provision of the October 23, 2015 "Order to Enforce Litigant's Rights" concerning the issue of an arrest warrant if counsel failed to pay fees, noting "can't arrest for non-payment of judgment" in the margins. (Compl., Ex. K.)  As a result, Plaintiff cannot adequately plead any type of injury from this order.

claim is predicated on the wire fraud, mail fraud, and unlawful debt collection theories described above, but because Plaintiffs have not adequately pled a substantive RICO claim under any of those theories, their conspiracy claim fails as well because the objects of the conspiracy are not crimes. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) (explaining that "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient"); see also Hlista v. Safeguard Properties, LLC, 649 F. App'x 217, 220 (3d Cir. 2016) (noting that a conspiracy claim will fail "if the pleadings do not state a substantive RICO claim upon which relief may be granted"); Kolar, 361 F. App'x 354 at 367 (affirming a dismissal of a § 1962(d) claim because the pleadings had failed to state a substantive RICO claim upon which relief could have been granted).

**C. FDCPA**

Plaintiffs also claim that the Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692p, through their attempted collection of the settlement judgment, but this claim also fails, as Plaintiffs fail to grasp the basic elements of the statute.  The elements of an FDCPA claim are (1) the Defendant must be a "debt collector" under 15 U.S.C. § 1692(a)(6); (2) the Plaintiff must be a "consumer," see 15

U.S.C. § 1692a; (3) the debt at issue must be a "consumer debt" under 15 U.S.C. § 1692(a)(5); and (4) the Defendant must violate through act or omission, some part of the FDCPA. Jensen v. Pressler & Pressler, 791 F.3d 413 (3d Cir. 2015) (citation omitted).  Here, Plaintiffs have not alleged sufficient facts to state a claim for any of these elements; thus, the FDCPA claim is dismissed.

The purpose of the FDCPA is to protect consumers from debt collectors by eliminating abusive debt collection practices. See Coles v. Zucker Goldberg & Ackerman, No. 14-1612, 2015 WL 4578479, at *6 (D.N.J. July 29, 2015).  As a threshold determination, a defendant entity, such as a law firm, must be a "debt collector" as defined within the statute.  Indeed, the FDCPA prescribes that "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" is a "debt collector." 15 U.S.C. § 1692(a)(6).  This provision of the FDCPA has been interpreted to apply to entities and persons that collect debts on behalf of others; however, the FDCPA, in general, does not apply to creditors attempting to collect debts on their own behalf. See Staub v. Harris, 626 F.2d

275, 277 (3d Cir. 1980); Schaffhauser v. Citibank (S.D.) N.A., 340 F. App'x 128, 130 n. 4 (3d Cir. 2009).

The Court finds that Plaintiffs have not sufficiently alleged that Defendants are debt collectors under the FDCPA.  In their Complaint, Plaintiffs aver, in a conclusory manner, that Defendants are debt collectors under the statute. (Compl. ¶ 109).  The Supreme Court has previously determined that attorneys may only be considered "debt collectors" if they regularly engage in consumer debt collection activities, including litigation. See Heintz v. Jenkins, 514 U.S. 291, 293 (1995).  While the Third Circuit has not developed any factors in determining whether a law firm is a debt collector, other circuits have held that a plaintiff must plead, at a minimum, that the law firm collects debts as a matter of course, or as a substantial part of its practice. See James v. Wadas, 724 F.3d 1312 (10th Cir. 2013); Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 62 (2d Cir. 2004) (holding that factors to consider include the number of debt collection communications issued, the frequency of such communications, whether the entity has personnel specifically assigned to work on debt collection activity, whether the entity has systems or contractors in place to facilitate such activity, and whether the activity is undertaken in connection with ongoing client relationships with entities that have retained

26

the lawyer or firm to assist in the collection of outstanding consumer debt obligations); Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999) (finding that the factors to consider include the volume of attorney's collection activities, frequent use of debt collection letters, and the relationship between attorney and the collection agency).

Here, Plaintiffs do not sufficiently allege that Defendants are debt collectors, as they have failed to plead any facts that would even suggest that Defendants collect debts as a matter of course or as a substantial part of its practice, outside of this this one particular matter arising from non-payment of a settlement figure.  More specifically, Plaintiffs do not include any allegations regarding the volume of Defendants' collection activities, nor do Plaintiffs allege that Defendants have any relationship with collection agencies or have any systems in place to facilitate debt collection.  Rather, Plaintiffs only provide conclusory averments that Defendants were debt collectors, which is insufficient to establish that Defendants regularly engage in the practice of debt collection under the FDCPA.  Plaintiffs argue that by placing language in the information subpoenas noting that it was an attempt to collect a debt, Defendants are therefore "debt collectors" under the statute. (Pl. Opp'n at 4.)  This argument fails as that specific language clearly pertains only to the instant enforcement of the

27

settlement agreement.  An attempt to collect a judgment debt does not convert a law firm into a statutory debt collector.

A plaintiff must also be a "consumer" under the Act, which is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692(a)(3).  In addition, the FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are <u>primarily for personal, family, or household purposes</u>, whether or not such obligation has been reduced to judgment;" 15 U.S.C. § 1692(a)(5) (emphasis added).  While Plaintiffs meet the "consumer" prong, they plead no facts that would indicate that their obligation to pay had anything to do with personal, family, or household purposes, except that they were "very real and very personal" to Plaintiffs and their families. (Pl. Opp'n at 4).  Instead, as the Complaint and RICO Case Statement spend pages discussing, this dispute arose out of a breach of commercial contract dispute, and the lien and subpoenas were issued in a direct attempt to enforce the terms of the court-approved settlement agreement.  The debt may have been personal to Plaintiff, but the primary purpose of the debt was to pay a judgment arising from commercial activity.  As a result, Plaintiff fails to state a claim as to the consumer debt element of the FDCPA.

Finally, a plaintiff must establish that a debt collector's effort to collect a debt from a consumer violated some provision of the FDCPA. _Piper v. Portnoff Law Assocs., Ltd._, 396 F.3d 227, 234 (3d Cir. 2005).  Plaintiffs state that Defendants violated the entire Act, without stating any specific provisions. (Compl. ¶¶ 109, 112, 115.)  Because this Court has already found that Plaintiffs have not stated a plausible claim that Defendants are "debt collectors" and that a "consumer debt" is at issue, we need not reach this final element.  The FDCPA claim will be dismissed.

### D. State law claims

The federal RICO and FDCPA claims—the bases for this Court's subject matter jurisdiction—having been dismissed, the Court is left with a discretionary choice as to whether it will retain supplemental jurisdiction over the Complaint's two state law claims for wrongful interference with economic advantage (Count II) and wrongful interference with attorney-client relationship (Count III). 28 U.S.C. § 1367(c)(3); _see_ _Carlsbad Tech., Inc. v. HIF Bio, Inc._, 556 U.S. 635 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); _New Rock Asset Partners, LP v. Preferred Entity Advancements, Inc._, 101 F.3d 1492, 1508 (3d Cir. 1996) (noting that dismissal of the

29

jurisdiction-granting claim "triggers a discretionary decision on whether jurisdiction over a state law claim should be declined pursuant to § 1367(c)(3)").  The Third Circuit has instructed that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).  Count II consists of unrelated activities between the parties that occurred in 2011, and Count III largely borrows from the conclusory allegations in Count I, Count IV, and the RICO Case Statement, and is doubtful as a cause of action under New Jersey law.  This issue will not be decided here.  As a result, the court declines to exercise its supplemental jurisdiction over the Complaint's state law claims and those claims are therefore dismissed without prejudice.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants'
motion to dismiss Plaintiffs' Complaint and RICO Case Statement
in its entirety without prejudice, and Plaintiffs shall be given
leave to attempt to amend if they file a proper motion proposing
an Amended Complaint that cures the deficiencies noted herein,
within 30 days.  The accompanying Order will be entered.


**November 23, 2016**                **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                 Chief U.S. District Judge